EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Jorge Torres Rodríguez<br><br>Peticionario | Certiorari<br><br>2024 TSPR 55<br><br>213 DPR ___ |

Número del Caso:  CC-2024-0288

Fecha:  30 de mayo de 2024

Tribunal de Apelaciones:

     Panel IX

Representante legal de la parte peticionaria:

     Lcda. Wanda Tamara Castro Alemán

Materia:  Resolución del Tribunal con Voto Particular Disidente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Jorge Torres Rodríguez<br><br>Peticionario | CC-2024-0288 | *Certiorari* |

RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de mayo de 2024.

Examinada la *Petición de certiorari* y la *Solicitud de paralización en auxilio de jurisdicción*, presentada por la parte peticionaria, se provee no ha lugar a ambas.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió un Voto particular disidente al cual se unieron la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez. La Jueza Presidenta Oronoz Rodríguez emite la expresión siguiente:

> "Hoy, tras el curso de acción mayoritario, perdimos la oportunidad para expresarnos sobre la validez constitucional de la enmienda realizada a la Regla 241 de Procedimiento Criminal, 34 LPRA Ap. II, a los efectos de permitir imponer una medida de seguridad luego de que se determine la no procesabilidad permanente de la persona imputada de delito. En esa coyuntura, debíamos evaluar si lo anterior contraviene lo expresado por la Corte Suprema federal en Jackson v. Indiana, 406 U.S. 715 (1972), y lo que pautamos en Pueblo v. Santiago Torres, 154 DPR 291 (2000). Ante ello, me veo compelida a disentir".

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Jorge Torres Rodríguez<br><br>Peticionario | CC-2024-0288 | Certiorari |

Voto particular disidente emitido por el Juez Asociado Señor ESTRELLA MARTÍNEZ al cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ y el Juez Asociado Señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 30 de mayo de 2024.

Lamentablemente, hoy la Mayoría de este Tribunal permitirá que una persona permanezca indefinidamente en un hospital siquiátrico del Gobierno, sin que se hubiese determinado causa probable para su arresto y luego de haber sido declarado no procesable permanentemente. Ello, a pesar de que, de acuerdo con nuestra jurisprudencia y la práctica habitual en los tribunales de Puerto Rico, procedía que, dada su improcesabilidad permanente, se archivaran los cargos criminales y se optara por la continuación del procedimiento de internación en la esfera civil, en particular, en la Sala Especializada de Salud Mental.

Toda vez que no puedo avalar que se mantenga bajo el cauce penal a una persona sorda, declarada no procesable permanentemente, sin destrezas de comunicación, con discapacidad intelectual y múltiples trastornos mentales

severos, incluyendo la adicción a poli-sustancias, respetuosamente **disiento**.

Expuesta la médula de la controversia, veamos, entonces, el trasfondo que la origina.

**I**

El Sr. Jorge Torres Rodríguez (Peticionario), a través de su representación legal, adujo que tiene cincuenta y un (51) años, es sordo de nacimiento, sin destrezas de comunicación (no domina ningún tipo de lenguaje manual, verbal ni escrito), padece de trastorno mental severo y discapacidad intelectual, así como otras condiciones de salud mental incluyendo adicción a poli-sustancias, siempre ha residido con sus progenitores en Vieques y solo entiende conceptos básicos relacionados a su diario vivir. Arguyó que el 10 de octubre de 2023 fue arrestado sin orden judicial[1] y que al ser conducido ante un magistrado para la celebración de la vista de causa probable para el arresto surgió información tendiente a demostrar que no podía ser procesable permanentemente.[2] Como resultado, adujo que, sin

---

[1]El proyecto de denuncia fue por el Art. 127-A del Código Penal, 33 LPRA sec. 5186a (maltrato a personas de edad avanzada) y el Art. 6.06 de la Ley de Armas de Puerto Rico de 2020, 25 LPRA sec. 466e (portación y uso de armas blancas). El incidente que dio origen a la denuncia fue por alegadamente amenazar a sus progenitores con un cuchillo y agredir a su padre con un tubo PVC.

[2]**Surge del expediente que la vista de causa para arresto se intentó llevar a cabo en dos ocasiones anteriores** (11 y 12 de octubre de 2023), **pero los intérpretes (lenguaje de señas y labio lectura) informaban que no era posible**

que se hubiese determinado causa probable para arresto, el foro primario refirió el caso para una evaluación para ingreso involuntario al amparo de la Ley de Salud Mental de Puerto Rico, 24 LPRA sec. 6152 et seq., (Ley Núm. 408-2000) y simultáneamente le ordenó una evaluación de procesabilidad bajo la Regla 240 de Procedimiento Criminal, supra. Tras la correspondiente orden de ingreso involuntario, el Peticionario fue internado en el Hospital de Psiquiatría Dr. Ramón Fernández Marina en San Juan.

De forma similar, manifestó que posteriormente se **celebró la vista de procesabilidad y se determinó mediante una Resolución y orden del 7 de noviembre de 2023 que se encuentra no procesable permanentemente.** Indicó que la defensa solicitó el sobreseimiento, el archivo del caso criminal y que se diera paso al proceso civil bajo la Ley Núm. 408-2000,[3] pero que el Ministerio Público solicitó una evaluación adicional bajo la Regla 241 de Procedimiento Criminal, 34 LPRA Ap. II, con el propósito de determinar si representaba un riesgo para la seguridad de otras personas.

---

**establecer una comunicación efectiva con el Peticionario, pues no entendía el proceso.**

[3]El 28 de noviembre de 2023, el Peticionario presentó una moción al foro primario titulada Ante la determinación de no procesable permanentemente el tribunal tiene dos opciones […] en la que le solicitó al foro primario que aplicara la Carta Circular Núm. 17 del Año Fiscal 2018-2019 del 2 de mayo de 2019 del Hon. Sigfredo Steidel Figueroa. Véase, Apéndice Petición de certiorari, págs. 61-62.

En una vista posterior, y tras escuchar la opinión del siquiatra del Estado, el 5 de diciembre de 2023 se notificó una Resolución y orden donde se expresó que el Peticionario representaba un riesgo para su seguridad y la de sus familiares. Por tal razón, **se le impuso como medida de seguridad bajo la Regla 241 de Procedimiento Criminal, supra, la permanencia indefinida en la institución psiquiátrica con orden de vistas trimestrales de seguimiento.**

Insatisfecho, el Peticionario recurrió ante el Tribunal de Apelaciones y alegó que la medida de seguridad es contraria al precedente reconocido en Pueblo v. Santiago Torres, 154 DPR 291 (2001) y que, dada la circunstancia de no procesabilidad permanente lo correcto en Derecho era sobreseer las denuncias y liberarlo o, en la alternativa en cuanto a su custodia, ordenarle su ingreso involuntario a un hospital al amparo de la Ley de Salud Mental. Añadió que la medida de seguridad se impuso sin jurisdicción por no haberse iniciado la acción penal por medio de una determinación de causa para arresto y sin imponerse mediante sentencia. Similarmente, arguyó que la Regla 241 de Procedimiento Criminal, supra, es inconstitucional en cuanto provee para imponer medidas de seguridad en los casos donde hay una determinación de no procesabilidad permanente sin haberse celebrado un juicio y sin haber una sentencia judicial, lo que alegó viola el principio de judicialidad

bajo el Art. 10 del Código Penal de Puerto Rico, 33 LPRA sec. 5010.[4] El foro apelativo intermedio confirmó la Resolución y orden del foro primario.

Aun inconforme, el Peticionario acudió ante nos y sostiene que el Tribunal de Apelaciones erró al confirmar al foro primario, a pesar de que el Procurador General reconoció en una de sus comparecencias que la determinación de no procesabilidad coincidía con la aplicación del precedente de Santiago Torres.[5] Por ello, en su Petición de certiorari planteó que la medida de seguridad violó su derecho fundamental al debido proceso de ley y es contraria a la normativa aplicable. En particular, presentó dos (2) planteamientos de error en los que incurrió el Tribunal de Apelaciones:

> 1) Error al imponer una medida de seguridad bajo la Regla 241 de Procedimiento Criminal, supra, sin haber una determinación de causa probable para arresto y en violación a los Artículos 10, 11 y 82 del Código Penal de Puerto Rico y al Art. II, Secs. 1, 7 y 10 de la Constitución de Puerto Rico.
>
> 2) Error al imponer una medida de seguridad al Peticionario luego de haber sido declarado no procesable permanentemente, en abierta

---

[4]El referido Artículo 10 dispone: "La pena o la medida de seguridad se impondrá mediante sentencia judicial exclusivamente". Íd.

[5]Solicitud de paralización en auxilio de jurisdicción, pág. 2. El Procurador General solicitó al foro intermedio que tomara en consideración que el Peticionario constituye un peligro para sí y los demás, la recurrencia de la situación entre este y sus padres, **que le ordenase al foro primario a remitir el asunto al trámite de internación civil, y que se apercibiera para que fuera atendido con premura y apremio.** Véase, Apéndice Petición de certiorari, pág. 91.

contradicción a lo establecido por la Corte
Suprema en Jackson v. Indiana, 406 U.S. 715, 738
(1972), en Pueblo v. Santiago Torres, supra, y
en violación a la Secc. 7 de la Constitución de
Puerto Rico y las Enmiendas Quinta y
Decimocuarta de la Constitución de los Estados
Unidos.

Establecido lo anterior, procedo a exponer brevemente el Derecho aplicable.

## II

### A.

La Regla 6 de Procedimiento Criminal, supra, es el mecanismo procesal mediante el cual se satisface la **exigencia constitucional** de que se determine causa probable para arrestar o detener a una persona. Pueblo v. Irizarry, 160 DPR 544, 555 (2003) (citas omitidas); Art. II, Sec. 10, Const. ELA, Tomo 1. Es norma reconocida que **la determinación de causa probable marca el inicio de la acción penal en nuestro ordenamiento, pues a partir de esta el tribunal adquiere jurisdicción sobre el imputado y sujeta a responder por sus actos**. Pueblo v. Rivera Martell, 173 DPR 601, 608 (2008); Pueblo v. Irizarry, supra, pág. 555.

En este procedimiento, el juez o la jueza deberán examinar la denuncia, las declaraciones juradas y/o testigos presentados o al denunciante, y determinar si hay causa probable para creer que se ha cometido un delito por el imputado, en cuyo caso autorizará que se inicie una acción penal en su contra. D. Nevares-Muñiz, Sumario de derecho procesal penal puertorriqueño, 10ma ed. rev., San

Juan, <u>Instituto para el desarrollo del derecho</u>, Inc., 2014, pág. 46.

Es por ello que "[s]in esta determinación de causa probable el proceso no puede continuar". E.L. Chiesa Aponte, <u>Derecho procesal penal de Puerto Rico y Estados Unidos</u>, Ed. Fórum, 1993, Vol. III, pág. 23. Como resultado, el imputado no podrá ser sometido a juicio sin previa determinación judicial de causa probable. Íd. Así "[e]sto se evita que el Estado someta a una persona a un procedimiento criminal arbitrario y lo encause criminalmente sin base para ello". <u>Pueblo v. Rivera Martell</u>, supra, pág. 609.

Por tanto, la determinación de causa para arresto por un magistrado no solo inicia la acción penal, sino que también faculta al Estado a presentar una denuncia o acusación en contra de la persona imputada. <u>Pueblo v. Miró González</u>, 133 DPR 813, 820 (1993). Es a partir de este momento en el que la persona se encuentra "acusada" y, por lo tanto, sujeta a contestar una acusación o denuncia en su contra, así como "propensa a ser convicta". Íd., citando a <u>United States v. Marion</u>, 404 US 307, 313 (1971), y a <u>Pueblo v. Carmen Centrale, Inc.</u>, 46 DPR 494, 498 (1934).

**B.**

La Regla 240 de Procedimiento Criminal, supra, detalla el procedimiento requerido para llevar a cabo una vista de determinación de procesabilidad respecto a la capacidad

mental o funcional del imputado. A su vez, la Regla 241 de Procedimiento Criminal, supra, establece el procedimiento para la imposición de medidas de seguridad. En lo pertinente dispone:

> Cuando el imputado fuere absuelto o hubiere una determinación de no causa en vista preliminar por razón de incapacidad mental y/o funcional, **o determinación de no procesabilidad permanente**, o se declare su inimputabilidad en tal sentido, **el tribunal conservará jurisdicción sobre la persona y podrá decretar internarlo en una institución adecuada para su tratamiento, si en el ejercicio de su discreción determina conforme a la evidencia presentada que dicha persona por su peligrosidad constituye un riesgo para la sociedad o que se beneficiará con dicho tratamiento.** La condición de sordera profunda, severa, moderada o leve, ni ninguna otra situación de hipoacusia o condición que le impida comunicarse efectivamente, por sí sola, será suficiente para que, en ausencia de los demás requisitos establecidos en estas Reglas, el tribunal conserve jurisdicción sobre la persona y decrete su ingreso a una institución.
>
> **En caso de ordenarse internarlo, la misma se prolongará por el tiempo requerido para la seguridad de la sociedad y el bienestar de la persona internada. En todo caso será obligación de las personas a cargo del tratamiento informar trimestralmente al tribunal sobre la evolución del caso.**
> …
>
> (d) Aplicación de la medida de seguridad. — Si el tribunal determinare conforme a la evidencia presentada que la persona por su peligrosidad constituye un riesgo para la sociedad o que habría de beneficiarse con dicho tratamiento, **dictará sentencia** imponiendo la medida de seguridad y decretando su internación en una institución adecuada para su tratamiento. Dicha internación podrá prolongarse por el tiempo realmente requerido para la seguridad de la sociedad y el bienestar de la persona internada, sujeto a lo dispuesto en el Artículo 81 del Código Penal de Puerto Rico.

En estos casos será obligación de las personas a cargo del tratamiento informar al tribunal trimestralmente sobre la evolución del caso… (Negrillas suplidas) Regla 241 de Procedimiento Criminal, supra.

### III

Es precisamente el texto de esta Regla 241 de Procedimiento Criminal, supra, y su consecuencia jurídica, la médula de la controversia en este pleito. Pues como vemos, la referida Regla 241 permite que aún **ante una determinación de no procesabilidad permanente**, el Tribunal imponga una medida de seguridad (como la hospitalización involuntaria junto a la imposición de vistas de seguimiento) y con ello continúe activo un procedimiento de naturaleza penal sin apariencia de finalidad como en este caso. Por esto, el Peticionario en esencia nos planteó que la imposición de esta medida de seguridad en sus circunstancias únicas y particulares, a saber, **sin que se pudiera realizar la vista de causa probable para arresto** y **con una declaración de no procesabilidad permanente**, viola su derecho fundamental al debido proceso de ley y al precedente establecido en Jackson v. Indiana, supra y en Pueblo v. Santiago Torres, supra. Véase, además, Ruiz v. Alcaide, 155 DPR 492, 501 (2001).

Ante este escenario, el Peticionario nos solicitó que al amparo de la Regla 28 del Reglamento del Tribunal Supremo, supra, ordenáramos la paralización de los procedimientos en el caso penal Pueblo v. Jorge Torres

_Rodríguez_, Crim. Núm. NSCI 2023-0124, para así permitir que la Sala Especializada de Salud Mental pudiera continuar con el proceso civil ya iniciado y pendiente en el caso civil NACI 2023-0685 y también al amparo de la Ley Núm. 408-2000.

Tal y como expondré a continuación, no tengo dudas que el sentido más básico de justicia exigía expedir el recurso ante nuestra consideración, pues no tiene sentido ni finalidad jurídica el seguir encausando bajo un procedimiento penal a una persona no procesable permanentemente. Me explico.

Sabido es que la capacidad mental del acusado para entender los procedimientos en su contra y poder ayudar a su defensa asistido por un abogado se conoce como procesabilidad. E.L. Chiesa Aponte, _Procedimiento Criminal y la Constitución, Etapa Adjudicativa_, Ediciones SITUM, pág.46 (2018). Véase, _Pueblo v. Pagán Medina_, 178 DPR 228 (2010); _Pueblo v. Castillo Torres_, 107 DPR 551, 555 (1978). En nuestro ordenamiento se reconoce que **constituye una violación al debido proceso de ley el encausar a una persona que no está procesable**. _Pueblo v. Rivera Montalvo_, 205 DPR 352, 364 (2020).

En lo aquí pertinente, en _Pueblo v. Santiago Torres_, supra, se dispuso que **"[f]rente a una <u>determinación de no procesabilidad permanente de un individuo, el Estado tiene dos (2) opciones</u>, a saber: dejarlo en la libre comunidad o iniciar los procedimientos de internación civil**."

(Negrillas y énfasis suplidos) <u>Pueblo v. Santiago Torres</u>, supra, págs. 312-313 (citando a <u>Jackson v. Indiana</u>, supra, pág. 738). No hay duda de que el Estado, bajo su poder de <u>parens patriae,</u> posee un interés legítimo en: (1) cobijar y proveerle al individuo aquel cuidado que por razón de su condición no puede brindárselo él mismo, incluyendo un tratamiento que mejore su condición; (2) bajo su poder regulador (<u>police power</u>) proteger a la ciudadanía ante el posible peligro que representa el individuo, y (3) prevenir que el individuo se haga daño a sí mismo. Íd., pág. 313 (citas omitidas).

Ahora bien, en ese ejercicio, el imputado posee un interés fundamental a que no se restrinja su libertad sin un debido proceso de ley. Íd. A esos fines, en <u>Pueblo v. Santiago Torres</u>, supra, se concluyó que durante la vista para la determinación de procesabilidad las partes también presentarán prueba a los efectos de determinar si, debido a su condición mental, el imputado constituye un riesgo para sí y para la sociedad. En caso de que el tribunal concluir que, por razón de su estado mental, el individuo es un riesgo para sí mismo o para otras personas, dispondrá para que en un término razonable se inicien los procedimientos para que reciba tratamiento en virtud de la Ley Núm. 408-2000. En particular, se dispuso:

> Es decir, **en el supuesto de no procesabilidad permanente, el tribunal, tras considerar el grado de peligrosidad del individuo** -tanto para sí como para la sociedad- como consecuencia de

su condición mental, **archivará los cargos en su contra y** lo pondrá en libertad o dispondrá que se inicien los procedimientos conforme a la Ley de Salud Mental. Resolvemos, por tanto, que de transcurrir un tiempo razonable sin hallar procesable a un imputado, deberá señalarse una vista para determinar si éste es no procesable permanentemente. El tribunal notificará y celebrará una vista exclusivamente a tales fines, **en donde de determinar la no procesabilidad permanente, archivará los cargos, y dispondrá si lo libera o si ordena que se proceda con los trámites de internación civil, conforme con la Ley de Salud Mental.** (Negrillas y énfasis suplidos) Pueblo v. Santiago Torres, supra, págs. 314-315.

Adviértase que en Pueblo v. Santiago Torres resolvimos con claridad que, ante la determinación de no procesabilidad permanente, **el Tribunal siempre tendrá que archivar los cargos** y solo tendrá discreción para decidir si la persona no procesable será en ese momento liberada o si, por el contrario, **se dará curso al trámite de internación civil conforme a la Ley Núm. 408-2000.** Pero indistintamente el curso seleccionado, siempre archivando los cargos.

Similarmente, el Profesor Chiesa Aponte nos comenta que el Tribunal está obligado a citar a una vista final de procesabilidad y que, si en esa vista final **se hace una determinación de no procesabilidad permanente, "la Constitución solo reconoce dos alternativas:** (1) decretar la libertad del acusado o **(2) iniciar un procedimiento civil para la internación no voluntaria (civil commitment). Así lo ha resuelto categóricamente la Corte Suprema de los**

**Estados Unidos en *Jackson v. Indiana*…".**[6] (Negrillas suplidas) E.L. Chiesa Aponte, Procedimiento Criminal y la Constitución, Etapa Adjudicativa, supra, págs. 57-58. El mismo curso de acción recomienda la profesora Dora Nevares-Muñiz al indicar que "[d]e determinarse que la persona no está procesable, **se sobreseerán los cargos** y se dispondrá para que se inicien procedimientos bajo la Ley de Salud Mental, de ser necesaria la internación de la persona". (Negrillas suplidas) D. Nevares-Muñiz, op. cit., pág. 171.

Adviértase que en el caso ante nuestra atención es precisamente el procedimiento de naturaleza civil en la Sala Especializada en Salud Mental (el cual se inició paralelamente al procedimiento penal) el que el Peticionario nos solicitó mediante el auxilio de

---

[6]El análisis constitucional fue uno combinado entre las cláusulas del debido proceso de ley y la igual protección de leyes. En lo pertinente se dispuso:

> We hold, consequently, that a person, charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal. *Jackson v. Indiana*, supra, pág. 738.

jurisdicción que pudiera continuar su curso dado el suspenso procesal en que se encuentra.

Ahora bien, tengo muy presente que Pueblo v. Santiago Torres, supra, se resolvió antes de la enmienda a la Regla 241 de Procedimiento Criminal, supra, mediante la Ley Núm. 281-2011. En lo pertinente, la referida enmienda engendró el escenario aquí en controversia: la imposición a una persona no procesable permanentemente de una medida de seguridad bajo la Regla 241 de Procedimiento Criminal, en lugar de dar paso al proceso de internación civil bajo la Ley Núm. 408-2000. Nos comenta el Profesor Chiesa que con esta enmienda desafortunadamente se mezcló los efectos de un fallo de no culpabilidad por razón de incapacidad mental y la determinación de no procesabilidad permanentemente. E.L. Chiesa Aponte, Procedimiento Criminal y la Constitución, Etapa Adjudicativa, supra, pág. 58.

En cuanto a esto, el Profesor Chiesa menciona que la enmienda dispuso una medida de seguridad al imputado declarado no procesable permanentemente y el continuar bajo la jurisdicción de la sala criminal bajo una medida de seguridad que "permite sea internado contra su voluntad en un hospital de siquiatría forense **y sin seguirse el procedimiento de internación civil dispuesto en la Ley de Salud Mental a la que se alude en Santiago Torres. Esto está reñido con Jackson v. Indiana**". (Negrillas suplida) Íd., págs. 58-59.

Similarmente, abona a mi disenso que el Comité Asesor Permanente de Reglas de Procedimiento Criminal en su Informe de Reglas de Procedimiento Criminal, al discutir la propuesta Regla 422 como homóloga a la actual Regla 241 **proponía eliminar** la referencia a la medida de seguridad en torno a la **determinación de no procesabilidad permanente**. Dado que

> la determinación final de no procesabilidad debe cumplir con los estándares fijados en Jackson v. Indiana, 406 US 715 (1972), y en Pueblo v. Santiago Torres, supra. En conformidad, una vez determinada la falta de procesabilidad permanente, el tribunal tendrá a su disposición dos alternativas: dejar en libertad a la persona imputada o disponer el inicio de los procedimientos de inter[nación] civil conforme a la Ley de Salud Mental de Puerto Rico… Véase, Informe de Reglas de Procedimiento Criminal, Tribunal Supremo de Puerto Rico, Secretariado de la Conferencia Judicial y Notarial, pág. 299, (2018).[7]

Por otro lado, debo mencionar que la situación fáctica de este caso aparenta haberse repetido en múltiples instancias y ser objeto de confusión sustantiva y administrativa. Por ello, el 2 de mayo de 2019, el Hon. Juez Sigfrido Steidel Figueroa emitió la Circular Núm. 17 del año fiscal 2018-2019,[8] específicamente para explicar el

---

[7]De hecho, la Regla propuesta disponía que las medidas de seguridad solo se impondrían mediante sentencia judicial en los casos de no culpabilidad por razón de inimputabilidad por incapacidad mental o trastorno mental transitorio. Íd., Regla Propuesta 424, pág. 296.

[8]Carta Circular Núm. 17 titulada Modelos de Formularios sobre Resoluciones y Órdenes de Evaluación para los Casos en los que, Conforme al Testimonio Pericial emitido en Sala, El Tribunal Determine la Continuación de los Procedimientos

procedimiento a seguirse para el manejo administrativo de los casos atendidos en virtud de las Reglas 240 y 241 de Procedimiento Criminal. En específico, en la Carta Circular se dispuso lo siguiente:

> Entre las situaciones evaluadas, están aquellas que han sido motivo de revisión judicial por el Tribunal de Apelaciones cuando se ha decretado la no procesabilidad de una persona en un futuro próximo (no procesabilidad permanente). En tales situaciones, el foro apelativo intermedio ha decidido que la Regla 241 de Procedimiento Criminal deberá interpretarse de conformidad con lo resuelto en Jackson v. Indiana, 406 US 715 (1972) y Pueblo v. Santiago Torres, 154 DPR 291(2001). A tenor con ello la persona deberá dejarse en libertad u ordenarse la internación civil al amparo de la Ley Núm. 408-2000, según enmendada, mejor conocida como "Ley de Salud Mental de Puerto Rico" (Ley 408 o Ley de Salud Mental). Véase, Pueblo v. Centeno Vázquez, KLCE201701223; Pueblo v. González Jiménez, KLCE201800490; Pueblo v. Yanira Román Colón, KLCE201800588.

Como resultado, la Carta Circular Núm. 17 comparte unos modelos de Resolución y orden con el propósito de **contribuir al proceso de conversión ordenada de un caso criminal al procedimiento civil conforme los criterios de la Ley Núm. 408-2000.**[9] De hecho, como mencioné, se desprende

---

Bajo el Ordenamiento Civil al Culminar la Medida de Seguridad o Ante una Determinación de No Procesabilidad Permanente (Reglas 240 y 241 de Procedimiento Criminal).

[9] Por ejemplo, el tercer Modelo es de Orden de Evaluación bajo la Ley Núm. 408-2000 (luego de determinación de no procesabilidad permanente) e indica que se utilizará para atender la situación en que la persona imputada o acusada fue declarada no procesable a un futuro próximo y la defensa solicita que se proceda conforme a lo establecido en Jackson v. Indiana, supra y Pueblo v. Santiago, supra. Íd., pág. 2.

del expediente que al inicio del pleito criminal se refirió al Peticionario a la Sala Especializada en Salud Mental y se creó una bifurcación procesal respecto a su ingreso involuntario en una institución psiquiátrica bajo la Ley Núm. 408-2000. Pues, por un lado, continuó el pleito criminal con los intentos fallidos para llevar a cabo la vista de causa para arresto bajo la Regla 6 de Procedimiento Criminal, la posterior determinación de no procesabilidad permanente y la imposición de la hospitalización como medida de seguridad bajo la Regla 241 de Procedimiento Criminal, supra, con vistas trimestrales de seguimiento. **Por otro lado, el pleito paralelo de internación civil ante la Sala Especializada es el que se ha visto paralizado en la espera de la finalidad del procedimiento penal.**

Conviene recordar que el Poder Judicial creó el <u>Programa de Acceso a la Justicia para Personas con Condiciones de Salud Mental</u> para precisamente brindar acceso a la justicia a grupos vulnerables, entre los que se encuentran las personas con condiciones de salud mental, incluyendo aquellos dependientes de sustancias controladas. Como una de las iniciativas, se instauró el <u>Proyecto para la Atención de Asuntos en Salud Mental</u>, mejor conocido como las **Salas Especializadas de Salud Mental**. En estas se realiza un **procedimiento de naturaleza civil con enfoque de justicia terapéutica** para apartarse del esquema tradicional de adjudicación, pues procura que el juez o la

jueza presida **con sensibilidad y con entendimiento** del proceso de tratamiento y recuperación.

Estas Salas Especializadas de Salud Mental **ofrecen seguimiento y supervisión judicial intensiva para lograr que la persona que está sujeta a los remedios al amparo de la Ley de Salud Mental Ley Núm. 408-2000 se adhieran a su tratamiento y logren su rehabilitación oportuna.** A su vez, una de sus funciones **es lograr la colaboración con personal de distintas agencias, entidades y proveedores para conseguir la canalización y coordinación de servicios necesarios para el participante.**[10]

En cuanto esto, el Peticionario arguyó que, desde el 26 de octubre de 2023, la Sala Especializada de Salud Mental, tenía un plan estructurado para proveerle ayuda, tratamiento necesario y una **alternativa de traslado a un hogar institucional** por no representar un riesgo de seguridad, **los cuales tuvieron que ser suspendidos en espera del cese de la medida de seguridad impuesta por la sala penal.**[11]

---

[10]Véase, Programa para Acceso a la Justicia de Personas con Condiciones de Salud Mental – Poder Judicial de Puerto Rico.

[11]Surge del expediente que el 7 de diciembre de 2023, se llevó a cabo una vista en la Sala Especializada donde comparecieron personal de la Administración de Servicios de Salud Mental y Contra la Adicción (ASSMCA), del Departamento de la Familia Local de Vieques, del Departamento de Salud, el Coordinador Auxiliar de Programas Judiciales, la Coordinadora de Servicios de la Región Este de MAVI, entre otros. De la Minuta se desprende que la jueza que presidía

Por otro lado, el curso de acción mayoritario pasa por alto, además, que en varias incidencias del expediente el Procurador General se allanó a que la sala civil sea la que tramite la hospitalización y los servicios interdisciplinarios necesarios al amparo de la Ley Núm. 408-2000. De hecho, en la propia Sentencia del Tribunal de Apelaciones se expresó:

> en ese procedimiento civil, "el tribunal pautó una vista de seguimiento para el 29 de febrero de 2024. De ese trámite civil, en el que el Departamento de Justicia no forma parte ni interviene, depende que el señor Torres Rodríguez reciba los servicios y la ayuda que necesita, lo que a su vez evitaría que sus padres, personas de edad avanzada, sigan siendo víctimas de los incidentes acaecidos con el peticionario". Tras ello, **el Procurador nos solicitó que**, ante el hecho de que el tribunal determinó que el peticionario constituye un peligro para sí y para los demás y la recurrencia de la situación entre este y sus padres, **ordenemos al foro primario a remitir el asunto al trámite de internación civil**. **Nos requirió también que ordenemos que apercibamos de la urgencia de que se atienda el asunto con premura y urgencia**.
>
> **Vemos que ambas partes nos solicitan que el foro primario remita presente causa al trámite de internación civil a tenor con la Ley 408-2000**.[12]

---

reconoció que existían dos procesos simultáneos y entre otras cosas ordenó a las partes a buscar un hogar permanente de acuerdo a las discapacidades del Peticionario y ordenó al Departamento de la Familia a auscultar y **proveer una lista de hogares que reciban personas estables en salud mental y que reciban personas con diferentes discapacidades, ya sean auditivas o de movilidad**. Véase, Minuta, Apéndice, págs. 67-70.

[12] (Negrillas suplidas). Véase, Apéndice, Sentencia del Tribunal de Apelaciones, págs. 107-108. Véase, además, una expresión similar en el Escrito en Cumplimiento de Orden

Empero, **contrario a lo expresamente solicitado por ambas partes**, el foro apelativo intermedio razonó que la determinación de la sala penal de imponer la medida de seguridad, a pesar de no haber causa para arresto y de existir una declaración de no procesabilidad, era razonable y que no contravenía la Regla 241 de Procedimiento Criminal, supra.[13] En consecuencia, sostengo que erró el foro intermedio al devolver **a la sala criminal** del foro primario para que continuara con los señalamientos de seguimiento y luego fuera esta sala la que decretara si refería el caso el caso al ámbito civil.

Ello ha provocado que, al presente, el Peticionario lleve siete (7) meses bajo una medida de seguridad impuesta mediante Resolución en un procedimiento penal, sin una determinación de causa probable para su arresto al amparo de la Regla 6, estando no procesable permanentemente y

---

que presentó el Procurador General ante el Tribunal de Apelaciones el 14 de febrero de 2024. Íd., págs. 79, 88 y 91.

[13]En reconsideración, el foro intermedio dictó una Resolución en la que expresó que la determinación bajo la Regla 241 constituye una medida provisional de cautela y protección al acusado y sus familiares que no contraviene lo resuelto en Pueblo v. Santiago Torres, supra. Véase, Resolución del Tribunal de Apelaciones del 12 de abril de 2024, Apéndice, pág. 137. Además, la Resolución cita en apoyo Pueblo v. Rivera Montalvo, 205 DPR 352, 366 (2020). **Sin embargo, advertimos que dicho caso se trataba de una controversia puntual bajo la Regla 192.1 de Procedimiento Criminal, supra, (procedimiento posterior a Sentencia) y nada se expresó cuando la declaración de no procesabilidad es permanente como en la situación de autos.**

mientras el procedimiento civil en la Sala Especializada de Salud Mental continúa en suspenso en espera del cese de la medida de seguridad.

Todas estas circunstancias fácticas contravienen el debido proceso que cobija al Peticionario y son contrarias a nuestra determinación en Pueblo v. Santiago Torres, supra.[14] Ello, por sí solo, justificaba nuestra intervención, pues el Peticionario no debe estar sujeto a un procedimiento penal, sino que, dada las circunstancias previamente reseñadas, el caso debía ser convertido al procedimiento civil mediante el trámite administrativo instaurado para ello y el cual el foro primario erró en no utilizar en este caso. De esta forma, quedó imposibilitado que la Sala Especializada en Salud Mental, en conjunto con los recursos interdisciplinarios, canalizaran el tratamiento y los servicios necesarios.

En consecuencia, y contrario a lo determinado hoy por una mayoría de este Tribunal, estoy convencido que resultaba necesario expedir el recurso de certiorari y trabajarlo mediante un trámite acelerado toda vez que el Peticionario continúa sin recibir el tratamiento y los servicios más adecuados bajo la supervisión de la Sala Especializada. De igual forma resultaba indispensable la

---

[14]Véase también Pueblo v. Méndez Pérez, 193 DPR 781 (2015) donde se reconoció que incluso la reclusión en un hospital constituye una privación de la libertad bajo el poder coercitivo del Estado. Íd., pág. 793.

paralización del procedimiento penal, a fin de que el procedimiento en la Sala Especializada de Salud Mental prosiguiera sin mayores escollos procesales. De esta manera, el Peticionario continuaría bajo la jurisdicción aplicable de la Sala Especializada y bajo los remedios de provistos en la Ley Núm. 408-2000.

En fin, este Tribunal falló en reconocer que el Peticionario continúa sujeto a un procedimiento penal: (1) sin una determinación de causa para arresto, (2) estando no procesable permanentemente y (3) sin que su caso penal fuera archivado y convertido al curso civil mediante el trámite administrativo dispuesto para ello por medio de la internación civil bajo la Ley Núm. 408-2000, y en este caso particular en la Sala Especializada de Salud Mental. Como no puedo avalar este derrotero, **disiento.**

> Luis F. Estrella Martínez
> Juez Asociado